McBRIDE, Judge.
This suit was instituted in the district court for the Parish of St. Bernard by plaintiffs, who reside in said parish, against the defendant-corporation, which is domiciled in New Orleans, for damages in the amount of $1,270.77. The plaintiffs entered into a contract with defendant where-under the latter was to install in plaintiffs’ home an intercom, fire, and burglar alarm system. Plaintiffs claim that at the signing of the contract and documents in connection therewith which took place at plaintiffs home, defendant’s representative, through misrepresentation and deceit, caused them to execute a second mortgage on their property, which they were subsequently forced to pay in the above amount to the holder to whom the mortgage note had been negotiated in order to secure a release of the second mortgage so that they could refinance the first mortgage resting on their property.
The defendant interposed an exception to the venue and jurisdiction ratione personae of the court, which was overruled.
The matter proceeded to trial, which culminated in a judgment being rendered in favor of plaintiffs as prayed for; defendant appealed.
Appellant’s exception to the venue and jurisdiction of the court is reurged before us. The exceptor’s contention is that the suit is simply one for breach of contract which does not fall under any exception to the general rule of venue set out in C.C.P. art. 42. The contention is that whereas defendant, a domestic corporation, has its domicile in the City of New Orleans, the suit should have been directed against it there. The exception is without merit; the suit is not based on a breach of a contract but sounds in tort, the allegations being that defendant fraudulently obtained a second mortgage on plaintiffs’ home to which it was not entitled and that plaintiffs were damaged in the amount they were required to pay to the third-party holder to have the second mortgage released.
In Waller & Edmonds v. Cockfield, 111 La. 595, 35 So. 778, the plaintiffs sued for *646 wrongful eviction from a cotton gin which they had leased. The lessor dispossessed the plaintiffs prematurely. The plaintiffs were awarded damages for the breach of the contract and also for loss of profits that they would have had had they been allowed to continue the ginning operations. The court stated:
“Manifestly, plaintiffs sustained a loss. Defendant is liable for an illegal act; in other words, a tort or wrong, which is the proximate cause of the loss.
* * * * * *
“ * * * The liability is partly contractual and partly ex delicto. To the extent that it is ex delicto, plaintiffs may recover. * * * ”
The Supreme Court said in Schoppel v. Daly, 112 La. 201, 36 So. 322:
“ * * * The existence of contractual relations between two parties is no bar to a right to damages for a tort committed pending the contract, though the contract may more or less affect their rights. Torts are often connected with or founded 'on contracts. Ballew v. Andrus’ Ex’r, 10 La. [216] 219; Cooley on Torts. * * * ”
Chronister v. Creole Corporation, La.App., 147 So.2d 218, involved an action by a tenant against the landlord for the return of their deposit and for damages for dispossession prior to the expiration of the lease. This court held that the action was one in tort, saying that the violation of a contract can cause damage ex delicto, as well as contractual.
See also Town of Eunice v. M & L Construction Company, La.App., 123 So.2d 579.
C.C.P. art. 74 provides:
“An action for the recovery of damages for an offense or quasi offense may be brought in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained. * * *”
Plaintiffs testified in their own behalf, and no testimonial proof was adduced by defendant, it placing reliance on certain documents.
The written contract in the record provides that defendant was to install the intercom, fire, and burglar alarm system for a stated price payable in monthly installments. The contract also provides : “There is no understanding or agreement other than herein set forth and no verbal agreements are recognized.”
Although there is no provision requiring the execution of a promissory note by plaintiffs, they were required to sign a written “application” appended to which is a promissory note payable to defendant for an amount greater than the contract price, which note they signed at the instance of defendant’s representative. At the same time, plaintiffs signed a mortgage bearing against their home purporting to secure said note.
Plaintiff Lottinger testified how he was mislead by the agent of defendant who obtained the mortgage surreptitiously. The mortgage document was the last page of a set of forms, the first pages of which were cut short so that the unsuspecting plaintiffs, guided by defendant’s agent, would sign at the foot of the longer mortgage form without knowing what it was. Defendant’s agent kept his hand on the papers and indicated the places for plaintiffs to sign, including the locus for the signature on the bottom of the last sheet, the mortgage, which could be signed without opening the pack of papers. Lottinger identified an identical packet of papers in the courtroom and explained how it was possible for the agent to obtain his signature on the mortgage without his being aware that there was a different form under the top sheets.
We, as did the district judge, have no doubt that the representative of defendant imposed upon the plaintiffs and se *647 cured a mortgage from them when no mortgage was required or contemplated under the contract.
Two days after the signing of the documents, defendant’s district manager presented a form labeled “Public Relations Report” to Lottinger and requested that he sign the same. This report contains a number of questions which are supposedly propounded to the customer, such as: Does the customer understand about his contract, the carrying charges, the second mortgage, the advertising agreement, qualified demonstrations, etc.? Lottinger admits he signed this report. The answer to question: “3. Legal description of property and second mortgage” is “yes.” However, Lottinger insists that the person who presented the Public Relations Report made no mention of a second mortgage and filled in the word “yes” without propounding the question and without Lottinger’s knowledge. We think the Public Relations Report to be nothing more than a device to trap and estop an unwary customer.
The trial court allowed as damages the amount plaintiffs were compelled to pay to effect a release of the second mortgage, which had been illegally secured, which was the proper measure. Plaintiffs are entitled to be restored to the identical position they would have been in had the illegal mortgage not been executed. The judgment is correct in all respects.
Pending this appeal, Frank J. Lottinger departed this life. By judgment rendered in his mortuary proceedings, his widow was sent into possession of her undivided community half of the judgment appealed from and as usufructuary of the other undivided one-half and his three children were sent into possession of decedent’s one-half subject to the usufruct of their mother. The widow and the major child have presented a motion to be recognized, with the minor children to whom Mrs. Lottinger is natural tutrix, as party-plaintiffs in lieu of the deceased, which motion we have granted.
For the reasons above stated, the judgment appealed from is amended so as to run in favor of the widow and children of the deceased Frank J. Lottinger as their interest may appear in accordance with a judgment of the Twenty-Fifth Judicial District Court for the Parish of St. Bernard rendered in proceedings No. 11,535 of its docket on May 14, 1965, in place and stead of the decedent Frank J. Lottinger, and as thus amended and in all other respects the judgment is affirmed.
Amended and affirmed.